UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BURKE ARMSTRONG,

                Plaintiff,

v.                                                  1:16-CV-1386
                                                (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS          PETER M. MARGOLIUS, ESQ.
  Counsel for Plaintiff
7 Howard Street
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.             JEREMY A. LINDEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Burke Armstrong ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 11, 14.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

I.      RELEVANT BACKGROUND

   A.      Factual Background

Plaintiff was born in 1962, making him 23 years old at the alleged onset date, 51 years old at the date he filed his application for benefits, and 53 years old at the date of the ALJ's decision.  Plaintiff reported obtaining his GED.  The ALJ found he has past relevant work as a construction worker and concrete laborer.  Generally, Plaintiff alleges disability due to a head injury and mental illness.

   B.      Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on November 25, 2013, alleging disability beginning September 1, 1986.  Plaintiff's application was initially denied on February 27, 2014, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ Arthur Patane on October 7, 2015.  On October 29, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 22-32.)[1]  On September 13, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-3.)

   C.      The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law.  (T. 24-31.)  First, the ALJ found Plaintiff is insured for disability benefits under Title II until June 30, 2017.  (T. 24.)  Second, the ALJ found that Plaintiff had engaged in

---

[1]     The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

substantial gainful activity from January 1994 through December 2012, but did not engage in substantial gainful activity after that period. (*Id.*) Third, the ALJ found that Plaintiff's affective disorder, anxiety disorder, and history of polysubstance abuse in remission are severe impairments, while Plaintiff's alleged physical impairments and traumatic brain injury are not severe impairments. (T. 25.) Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 25-26.) Specifically, the ALJ considered Listings 12.02 (organic mental disorders), 12.04 (affective disorders), 12.08 (personality disorders), and 12.09 (substance addiction disorders). (*Id*.) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and execute simple work tasks, maintain attention and concentration for and respond appropriately to changes associated with simple work tasks, maintain a regular schedule, and interact with supervisors and coworkers without limitation, but he can have only occasional interaction with the general public.

(T. 26-27.) Sixth, the ALJ found that Plaintiff is unable to perform his past relevant work with the above limitations. (T. 30.) Seventh, and finally, the ALJ found that Plaintiff remains able to perform a significant number of other jobs in the national economy, as the non-exertional limitations in the RFC would have little or no effect on the occupational base of unskilled work at all exertional levels. (T. 31.) The ALJ therefore concluded that Plaintiff is not disabled.

    **D.**    **The Parties' Briefings on Their Cross-Motions**

Generally, Plaintiff argues that the RFC determination is not supported by substantial evidence. (Dkt. No. 11, at 3-7 [Pl. Mem. of Law].) More specifically, Plaintiff argues that the ALJ erred in failing to credit Plaintiff's testimony regarding limitations caused by a remote

3

traumatic brain injury, in misrepresenting the degree of symptoms noted in the treatment notes, and in failing to afford greater weight to the opinions from the consultative examiner and State Agency psychological consultant. (*Id.*)

Generally, Defendant argues that the RFC determination is supported by substantial evidence. (Dkt. No. 14, at 4-17 [Def. Mem. of Law].) More specifically, Defendant argues that the ALJ reasonably relied on relatively benign mental status findings in the treatment notes. (Dkt. No. 14, at 5-6, 13-15 [Def. Mem. of Law].) Defendant also argues that the ALJ appropriately found somewhat less restrictive limitations than the examining and non-examining sources based on the totality of the evidence, and that neither of these opinions suggest an inability to perform at least unskilled work in any event. (Dkt. No. 14, at 6-8 [Def. Mem. of Law].) Defendant also argues that the RFC finding is supported by Plaintiff's work activity during the relevant period and reported activities of daily living. (Dkt. No. 14, at 8-10 [Def. Mem. of Law].) Defendant lastly argues that the ALJ correctly determined that Plaintiff's traumatic brain injury was not a medically determinable impairment because there was no evidence supporting this impairment other than Plaintiff's subjective reports to providers. (Dkt. No. 14, at 10-12 [Def. Mem. of Law].)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for

4

doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

5

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether the RFC Finding is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 4-17 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

Residual functional capacity is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and] symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 5:11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

When assessing the RFC, the ALJ afforded significant weight to the opinions from consultative examiner Neil Berger, Ph.D., and non-examining State Agency psychological consultant T. Bruni, Ph.D., but noted that he overall found "less severe limitations, particularly regarding attention, concentration, managing a schedule, and interaction with others," because

the extent of the opined limitations "were based on subjective reports from the claimant that were either uncorroborated by objective evidence or that were inconsistent with treatment notes, mental status evaluations, work activity, inconsistent subjective reports regarding friendships and activities of daily living, and the claimant's obtainment of a commercial driver's license." (T. 30.) Plaintiff primarily argues that the ALJ erred in failing to adopt the full extent of limitations opined by Dr. Berger and Dr. Bruni because the ALJ failed to account for the full range of abnormal findings in the mental status examinations that supported those opinions. (Dkt. No. 11, at 4-6 [Pl. Mem. of Law].) However, Plaintiff's arguments are not persuasive because even if the treatment notes showed some symptoms related to Plaintiff's mental health impairments, they do not support restrictions greater than those included in the RFC finding.

Plaintiff cites to the mental status findings from multiple treatment instances, noting symptoms such as dysphoric mood, blunted affect, monotone and slightly pressured speech, somewhat tangential thoughts, preoccupied thought content, poor attention span, poor tolerance, lethargic behavior, and mildly impaired memory, but fails to note that many of these symptoms were not observed on a consistent basis throughout the record. (Dkt. No. 11, at 4-6 [Pl. Mem. of Law].) Rather, these more serious observations were mostly noted only when Plaintiff was seeking short-term inpatient treatment at the hospital for an exacerbation of his depression and anxiety in January 2014, with only a few sporadic notations in the other treatment notes. (T. 239-86, 312, 322, 326, 346, 355.) Plaintiff also fails to explain how these symptoms, even if they had been present on a more consistent basis, would justify greater mental work-related restrictions.

The ALJ's characterization of the medical evidence overall as showing mostly benign clinical abnormalities is supported by substantial evidence. Plaintiff presented to David Fleming,

M.A., on January 6, 2014, reporting depression with suicidal thoughts and indicating he felt he would be fine if he could get back on medication. (T. 289.) Mr. Fleming noted Plaintiff was actively suicidal without intent and observed Plaintiff was alert and oriented with a flat affect, depressed mood, fair eye contact, laconic speech, slowed reaction times, normal remote memory, mildly impaired recent memory, no significant preoccupations, an open and cooperative attitude, fair judgment, poor attention, and poor planning. (T. 291.) Plaintiff was sent to the emergency room for intervention related to suicidal thoughts and was admitted for psychiatric evaluation. (T. 239, 292.) Mental status evaluations throughout his period of admission at the hospital showed a variety of mental symptoms that generally improved during the course of treatment. (T. 241-86.) At his discharge on January 15, 2014, he was observed to be pleasant and cooperative with good eye contact, coherent and goal-directed speech, normal mood, full affect, normal attention and concentration, and adequate insight and judgment. (T. 285.) He was discharged with instructions to continue Prozac and Seroquel. (T. 286.) On January 23, 2014, Bella Dizon Rillo observed Plaintiff was alert and oriented with an appropriate affect, depressed mood, good eye contact, logical, coherent and goal-directed speech, normal memory, normal psychomotor activity, a negligible degree of conceptual disorganization, no significant preoccupations, a cooperative and interested attitude, good judgment, the ability to attend and focus, and the ability to resist urges. (T. 297.)

On February 3, 2014, consultative examiner Dr. Berger observed Plaintiff was cooperative with an adequate manner of relating, lethargic motor behavior, some word-finding difficulties, adequate receptive language, coherent and goal-directed thought process, a flat and dysphoric affect, dysthymic mood, intact attention and concentration, mildly impaired memory, below average cognitive functioning, and fair insight and judgment. (T. 312.) On February 27,

9

2014, Ms. Rillo observed Plaintiff was oriented and alert with a restricted affect, anxious and depressed mood, fair eye contact, animated speech, normal memory, normal psychomotor activity, no conceptual disorganization, no significant preoccupations, an open and cooperative attitude, fair judgment, poor attention span, and poor frustration tolerance. (T. 326.) On March 7, 2014, Gelda Baldini, M.D., observed Plaintiff was alert and oriented and had a normal mood and affect and fluent speech. (T. 335.) On March 20, 2014, Ms. Rillo observed Plaintiff was alert and oriented with appropriate affect, fair mood, good eye contact, logical, coherent and goal-directed speech, normal memory, a negligible degree of conceptual organization, no significant preoccupations, a cooperative and interested attitude, fair judgement, an ability to attend and maintain focus, and an ability to resist urges. (T. 324.) On April 17, 2014, Plaintiff reported his mood had been stable with no angry outbursts and he was working a night-shift job; Ms. Rillo observed that he was oriented and alert with appropriate affect, cheerful mood, good eye contact, animated speech, normal memory, normal psychomotor activity, no conceptual disorganization, no significant preoccupations, an open and cooperative attitude, fair judgment, difficulty ignoring irrelevant stimuli, and the ability to resist urges. (T. 322.) On July 24, 2014, Plaintiff reported doing well with no depression and only some anxiety at the end of the day; Ms. Rillo observed he was well-oriented and alert with an appropriate affect, euthymic mood, good eye contact, logical, coherent and goal-directed speech, normal memory, normal psychomotor activity, a negligible degree of conceptual disorganization, no significant preoccupations, a cooperative and interested attitude, good judgment, an ability to attend and focus, and an ability to resist urges. (T. 316.) A treatment plan from August 27, 2014, showed that Plaintiff reported he was enjoying his job at Home Depot and had no thoughts of suicide for several weeks. (T. 339.) On October 13, 2014, Dr. Baldini observed Plaintiff had a flat affect with fair eye contact,

pleasant mood, and good insight. (T. 343.) On October 23, 2014, Kelly Baxter observed Plaintiff was alert and oriented with appropriate affect, euthymic mood, good eye contact, logical, coherent and goal-directed speech, normal memory, normal psychomotor activity, a negligible degree of conceptual disorganization, no significant preoccupations, a cooperative and interested attitude, good judgment, an ability to attend and focus, an ability to resist urges, and a slight speech impediment. (T. 337-38.)

On April 9, 2015, after a period in which Plaintiff had not received mental health treatment, Mr. Fleming observed Plaintiff was oriented and alert with a flat affect, anxious and depressed mood, good eye contact, normal memory, normal psychomotor activity, a negligible degree of conceptual disorganization, no significant preoccupations, a cooperative and interested attitude, good judgment, an ability to attend and maintain focus, and an ability to resist urges; Plaintiff reported he felt he needed to get back into treatment. (T. 355, 359.) On May 28, 2015, Dr. Baldini observed Plaintiff had a blunted affect, normal eye contact, and a pleasant but depressed mood; Dr. Baldini prescribed Lamictal. (T. 348-49.) On June 16, 2015, Plaintiff reported he was working a job stocking shelves and Dr. Baldini observed he had a blunted affect, normal eye contact, and a depressed and pleasant mood as well as limited insight. (T. 346.) Based on the above summation of the mental status examination findings throughout the record, the ALJ was not unreasonable in finding that the treatment evidence did not show symptoms which suggested greater limitations than accounted for in the RFC. As Defendant notes in detail in her memorandum, there were discrete observations of more serious symptoms, but findings were much more consistently normal or mild in quality. (Dkt. No. 14, at 5-6 [Def. Mem. of Law].) The RFC finding is therefore consistent with the treatment evidence as a whole, contrary to Plaintiff's argument.

In addition to the medical evidence, the ALJ also cited to the evidence related to Plaintiff's work activity and reported daily activities during the relevant period as evidence that suggested Plaintiff was capable of performing the range of unskilled work outlined in the RFC. (T. 30.) Plaintiff reported at the hearing in October 2015 that he was at that time working at a job cleaning portable toilets 50 hours per week and had been doing that work for six weeks. (T. 40-41.) He also testified that he was working in job stocking shelves prior to that, a job that he left not due to mental limitations or difficulty performing the work, but because he found a better job. (T. 41-42.) Treatment notes also show that Plaintiff was working at Home Depot during 2014 and noted that that job was ending because it was seasonal rather than due to difficulties performing the required tasks. (T. 316.) As the ALJ noted, the fact that Plaintiff was able to successfully work in multiple different jobs, even on a part-time basis for some, suggests that Plaintiff's mental impairments did not impose work-preclusive restrictions. *See Brooks v. Comm'r of Soc. Sec.*, No. 6:15-CV-1135, 2016 WL 7168171, at *7 (N.D.N.Y. Dec. 8, 2016) (noting that the ALJ is permitted to consider a claimant's work history and activity when assessing the credibility of a claimant's alleged limitations); *Parks v. Comm'r of Soc. Sec.*, No. 7:14-CV-1367, 2016 WL 590227, at *9 (N.D.N.Y. Feb. 11, 2016) (noting that the ALJ properly used plaintiff's participation in college and full-time work during the alleged period of disability when determining whether her allegations were credible); *Darby v. Comm'r of Soc. Sec.*, No. 5:11-CV-1442, 2012 WL 7810948, at *10 (N.D.N.Y. Dec. 4, 2012) (noting that plaintiff's work activity during the relevant period and the reasons she stopped working supported the ALJ's decision not to credit the extent of plaintiff's allegations of limitations). Plaintiff also reported that he earned his commercial driver's license in 2014 after taking an 80 hour course, which suggests greater mental functioning than Plaintiff otherwise alleged. (T. 45, 55.) Additionally,

Plaintiff's reported activities do not suggest greater impairment than accounted for in the RFC. At the hearing, Plaintiff reported he lives alone, drives, and goes hiking. (T. 49.) In a written function report, Plaintiff reported he had no problems with personal care, made quick meals daily, performed all household chores, went outside daily, drove, grocery shopped daily, paid bills and handled his own money, read, watched television, and went to daily church meetings. (T. 195-99.) This range of activities is consistent with the treatment evidence and does not suggest greater impairment of mental functioning. These reasons, grounded in the evidence, provide further support for the RFC finding.

It is also worth noting that the opinions from Dr. Berger and Dr. Bruni do not suggest limitations that were necessarily greater than what the ALJ accounted for in the RFC. Dr. Berger opined on February 3, 2014, that Plaintiff could follow and understand simple directions and instructions and perform simple tasks independently and had mild limitations in abilities to maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently and make appropriate decisions, and moderate limitations in his abilities to relate adequately with others and appropriately deal with stress. (T. 313.) On February 24, 2014, Dr. Bruni opined that, overall, Plaintiff retained the capacity to understand and follow simple directions and instructions, adhere to a regular schedule, adequately relate to others, and adapt to change. (T. 65-67.) The ALJ arguably accounts for the opined limitations of both sources by finding Plaintiff could perform simple work tasks, respond appropriately to changes associated with simple work tasks, maintain a regular schedule, and have only occasional interaction with the general public. (T. 26-27.) In any event, these opinions certainly do not suggest that Plaintiff would experience disabling mental limitations that would preclude him from performing unskilled work. Consequently, even if these opinions do suggest greater

13

limitations to some extent, any failure to adopt the full extent of these opinions, if supported by the evidence, would be harmless because they would not undermine the ALJ's ultimate finding that Plaintiff was able to perform a significant range of unskilled work in the national economy at all exertional levels. (T. 31); *see also Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (noting that an error is considered harmless where proper consideration of the physician's opinion would not change the outcome of the claim) (citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)); *Camarata v. Colvin*, No. 6:14-CV-0578, 2015 WL 4598811, at *16 (N.D.N.Y. July 29, 2015) (denying the request for remand because application of the correct legal standard would not change the outcome); *Sova v. Colvin*, No. 7:13-CV-0570, 2014 WL 4744675, at *6 (N.D.N.Y. Sept. 23, 2014) (finding the ALJ's failure to consider a spinal x-ray harmless where consideration of the mild degenerative changes in that x-ray would not have changed the outcome of the ALJ's findings); *Ryan v. Astrue*, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009) (finding harmless error where the ALJ improperly discounted the treating physician's opinion, but still included the opined limitations from that opinion in the RFC, so remand would serve no purpose).

Plaintiff additionally argues that the ALJ erred in failing to credit his reports regarding the remote traumatic brain injury he allegedly sustained in a car accident in the 1980s. (Dkt. No. 11, at 4 [Pl. Mem. of Law].) However, Plaintiff fails to explain how considering this alleged impairment as a severe impairment would have resulted in any greater functional restrictions. As the ALJ correctly notes, there is no evidence corroborating Plaintiff's traumatic brain injury other than the various notations of this diagnosis by physicians based on Plaintiff's reports. (T. 25.) The medical evidence does not show any sustained deficits in Plaintiff's cognitive or intellectual abilities that suggest functional limitations. Although Dr. Berger noted Plaintiff

appeared to have below average cognitive functioning, he did not opine any limitations which suggest this negatively impacted Plaintiff's work-related abilities beyond what the ALJ accounted for in relation to the mental impairments. (T. 312-13.) Additionally, as the ALJ notes, Plaintiff had earnings well above the level of substantial gainful activity ("SGA") for all years between 1994 and 2009, with more above-SGA level earnings in 2011 and 2012. (T. 24, 170.) If Plaintiff sustained his traumatic brain injury in the 1980s, his significant work history for many years after that injury suggests that it did not cause issues that impacted his ability to perform work-related functions necessary for at least unskilled work. Plaintiff appears to argue that a mere diagnosis of a traumatic brain injury was sufficient to require the ALJ to include greater limitations related to that impairment in the RFC, but such argument is not consistent with either the evidence in this case or the relevant legal standards. *See Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) ("[T]he 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe.") (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Colvin v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). The ALJ's finding that this impairment did not impose additional work-related limitations is supported by substantial evidence.

For all the above reasons, the RFC finding is supported by substantial evidence, and remand is not warranted on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: October 6, 2017
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge